UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL REAGAN,** | ) | **CASE NO.1:14CV548** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **MAQUET CARDIOVASCULAR US** | ) | **OPINION AND ORDER** |
| **SALES LLC, ET AL.,** | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendants' Maquet Cardiovascular US Sales, LLC ("Maquet"), Steve Gerrald ("Gerrald"), and George Sanders ("Sanders") [collectively "Defendants"] Motion to Transfer Venue (ECF #4). Defendants request that this matter be transferred, in its entirety, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the District of New Jersey. For the following reasons, the Court grants Defendants' Motion to Transfer Venue and transfers this matter, in its entirety, to the United States District Court for the District of New Jersey.

## I.  FACTS

Plaintiff Michael Reagan ("Reagan") was employed by Maquet as an Account

Manager for the Central (Midwest) region.  On May 2, 2013, Reagan executed Maquet's re-issued "At-Will Employment, Confidential Information, Non-Solicitation, and Invention Assignment Agreement" ("Agreement").  On May 9, 2013, Sanders, a Maquet Human Resources Manager, executed the Agreement on behalf of Maquet.  The Agreement contains a forum selection clause at Section 12, which states:

> 12.     Governing Law; Forum Selection; Consent to Personal Jurisdiction. This Agreement, my employment, and its conclusion, will be governed by the laws of the State of New Jersey without giving effect to any choice-of-law rules or principles that may result in the application of the laws of any jurisdiction other than New Jersey.  I hereby expressly consent to the exclusive personal jurisdiction and venue of the state and federal courts located in New Jersey and agree that any lawsuit or claim concerning this Agreement, my employment or the conclusion thereof, including but not limited to, all statutory employment discrimination claims, will be brought exclusively in either the state (Essex or Passaic counties, only) or federal court (District of New Jersey, Newark Vicinage, only) of New Jersey.  I further agree that New Jersey is a convenient forum for any such lawsuit, and waive any argument to the contrary.

On August 16, 2013, Maquet terminated Reagan's employment.  Gerrald, Reagan's direct supervisor, and Sanders informed Reagan that he was terminated for misconduct-related reasons.  Upon notifying Reagan of Maquet's decision, Sanders signed and issued Reagan's termination letter.  Reagan disputes Defendants' accusations of misconduct.

## II. PROCEDURAL HISTORY

On February 11, 2014, Reagan filed a five-count Complaint in the Court of Common Pleas, Cuyahoga County, Ohio, alleging that his employment with Maquet was unlawfully terminated.  In his Complaint, Reagan alleges claims of Retaliatory Discharge in Violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.; (Count I); Failure to Provide Reasonable Accommodation (Count II); Wrongful Discharge Based on Disability

Discrimination (Count III); Wrongful Discharge Based on Age Discrimination (Count IV); and Intentional Infliction of Emotional Distress (Count V). On March 12, 2014, Defendants removed this matter to the Northern District of Ohio (ECF #1).

On March 13, 2014, Defendants moved to transfer this matter, in its entirety, to the District of New Jersey (ECF #4). Defendants submit that transfer is proper because Reagan executed the Agreement which contained the forum selection clause designating New Jersey as the exclusive forum for all employment disputes. Defendants point to the United States Supreme Court's decision in *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist of Texas*, 134 S. Ct. 568, 581 (2013) in which the Supreme Court held that forum selection clauses should be given "controlling weight in all but the most exceptional circumstances." Defendants also contend that public interest factors weigh in favor of transfer.

Reagan responded to Defendants' Motion on March 28, 2014 (ECF #6). In his response, Reagan does not contest the validity of the Agreement or its forum selection clause. Rather, Reagan argues that public interest factors weigh in favor of an Ohio venue. Reagan further argues that even if the forum selection clause is enforceable as to Maquet, it is unenforceable as to Sanders and Gerrald because they are not parties to, nor third party beneficiaries of, the Agreement.

In their Reply of April 4, 2014, Defendants maintained that public interest factors favor transfer (ECF #7). Defendants then argued that the forum selection clause is enforceable as to Sanders and Gerrald for two reasons. First, Sanders signed the Agreement. Second, under New Jersey and Ohio law, those individuals "closely related" to the Agreement's signatories are bound by forum selection clauses.

## III. LAW AND ANALYSIS

A.    **The New Jersey forum selection clause is valid and enforceable as to Defendant Maquet and the individual employee Defendants, Sanders and Gerrald.**

The first question the Court must address is whether the New Jersey forum selection clause contained in the Agreement is valid and enforceable.

Neither party alleges any issues concerning the validity of the Agreement or its forum selection clause, nor do the parties allege that the Agreement or clause is unconscionable or was entered into under duress. In short, the validity of the Agreement and its forum selection clause is unchallenged.

Similarly, neither party alleges that the Agreement or clause is unenforceable as to Maquet. In his opposition brief, Reagan concedes that the Agreement can be reasonably read to apply to claims that exist between Reagan and Maquet. Therefore, the enforceability of the forum selection clause as to Maquet is also unchallenged.

Reagan does contend, however, that the forum selection clause is unenforceable as to Sanders and Gerrald because they are not parties to, nor third party beneficiaries of, the Agreement. Upon consideration of the Agreement and the parties' arguments, the Court disagrees with Reagan and holds that the forum selection clause is enforceable as to Sanders and Gerrald because they are "closely related" to the Agreement and the current dispute.

As an initial matter, the enforceability of the Agreement's forum selection clause is governed by federal law, not state law. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988) ("[F]ederal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause.").

Under both New Jersey and Ohio federal law, a forum selection clause may be

enforced against a non-signatory to a contract if the non-signatory is closely related to the contractual relationship or dispute. *Donachy v. Intrawest U.S. Holdings, Inc.*, No. CIV.A. 10 4038 RMB, 2011 WL 2973543, at *2 (D.N.J. July 21, 2011) ("It is widely accepted that "non-signatory third-parties who are closely related to [a] contractual relationship are bound by forum selection clauses contained in the contracts underlying the relevant contractual relationships." (citing *Sahara Sam's Oasis, LLC v. Adams Companies, Inc.,* No. CIV.A. 10 0881, 2010 WL 3199886, at *6 (D.N.J. Aug. 12, 2010))). *Villanueva v. Barcroft*, 822 F. Supp. 2d 726, 737 (N.D. Ohio 2011) ("[A] non-signatory to a contract may be bound by "a forum selection clause in that contract if the non-signatory is so sufficiently 'closely related' to the dispute that it is foreseeable that the party will be bound." (citing *Hitachi Med. Sys. Am. v. St. Louis Gynecology & Oncology, LLC*, No. 5:09-CV-2613, 2011 WL 711568, at *8 (N.D.Ohio Feb. 22, 2011))).

New Jersey federal courts have concluded that employees of a contracting party who are not signatories or third-party beneficiaries are "closely related" and, therefore, bound by valid forum selection clauses. *Affiliated Mortgage Prot., LLC v. Tareen*, No. CIV.A.06 4908 DRD, 2007 WL 203947, at *3 (D.N.J. Jan. 24, 2007) (holding that employees are "closely related to the contractual relationship and, therefore, are bound by the forum selection clause").

Ohio federal law is not so clear. Neither the Sixth Circuit nor this Court has explicitly stated that employees of a contracting party are "closely related." Rather, when determining whether a non-signatory is closely related to a forum selection clause "a common sense, totality of the circumstances approach" is utilized. *Hitachi Med. Sys. Am., Inc.*, 2011 WL

711568, at *9 citing *Regions Bank v. Wyndham Hotel Mgmt., Inc.*, No. 3:09-1054, 2010 WL 908753, at *6 (M.D.Tenn. March 12, 2010).  Under this approach, a court must inquire "whether, in light of [the] circumstances, it is fair and reasonable to bind a non-party to the forum selection clause." *Id.*

Regardless of whether New Jersey or Ohio law is applied, the same conclusion is warranted—Sanders and Gerrald are bound by the forum selection clause because they are both "closely related" to the Agreement and dispute.

Even though Sanders and Gerrald are non-signatories to the Agreement, because Sanders and Gerrald are employees of Maquet they are considered "closely related" under New Jersey law.  The Court also concludes that Sanders and Gerrald are "closely related" under Ohio law.  Applying this Court's "common sense, totality of the circumstances approach" to the alleged facts in this case, Sanders and Gerrald appear to be directly related to the Agreement and current dispute.  Neither side disputes that Sanders was directly involved with Reagan's execution of the Agreement.  Also, neither side disputes that Sanders and Gerrald were directly involved with the decision to terminate Reagan.  Moreover, Reagan's claims are derived from the alleged discriminatory actions taken by Sanders and Gerrald.  Thus, because Sanders and Gerrald had direct involvement with the execution of the Agreement and Reagan's termination, both are sufficiently "closely related" to the Agreement and current dispute.

Therefore, as a result of being "closely related" to the Agreement and current dispute, the Agreement's forum selection clause may be enforced against Sanders and Gerrald.

Reagan correctly states that the Agreement could have been drafted more clearly.

However, allowing bifurcation of his claims would set a dangerous precedent that could result in forum-shopping. Future plaintiffs could simply avoid a valid forum selection clause by naming a defendant, closely related to the contractual relationship or dispute, but who is not a signatory or third-party beneficiary. Moreover, bifurcating Reagan's claims would result in undue delay and a significant financial burden on the parties.

**B.     This matter is transferred, in its entirety, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the District of New Jersey.**

Having determined that the forum selection clause is enforceable as to both Maquet and the individual employees, Sanders and Gerrald, the Court must determine whether transfer is appropriate. The United States Supreme Court's decision in *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist of Texas*, 134 S. Ct. 568, 581 (2013) controls the weight a district court should give a forum selection clause when considering dismissal or transfer.

In *Atl. Marine*, the Supreme Court first held that the proper mechanism for enforcing a forum selection clause is 28 U.S.C. § 1404(a). The Supreme Court further held "[w]hen a defendant files such a motion, we conclude, a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Id*. at 581. When a valid and enforceable forum selection clause evidences the parties' intent to bring an action in a particular federal district, the forum selection clause must be given "controlling weight in all but the most exceptional circumstances." *Id.* "Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.*

In its decision, the Supreme Court considered the usual analysis of a § 1404(a) motion to transfer.

> In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations. Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice." §1404(a).

*Id.* However, the Supreme Court concluded that the existence of a valid forum selection clause changes the above analysis.

> The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which "represents the parties' agreement as to the most proper forum." (Internal citation omitted). The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote "the interest of justice," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." (Internal citations omitted).

*Id.*

The Supreme Court described three ways the usual analysis of a § 1404(a) motion to transfer changes when there exists a valid forum selection clause. First, plaintiff's choice of forum is accorded no weight because plaintiff is presumed to have expressed his desired forum in the forum selection clause. Second, courts cannot entertain arguments on the parties' private interests as those are now deemed to weigh "entirely" in favor of the choice of forum contained in the forum selection clause. As a consequence, a district court may only consider arguments about public interest factors. Third, the law of the state wherein the suit was filed, if different from the forum agreed to in a forum selection clause, will not follow the case upon transfer.

*Id.* at 581-82.

Applying the Supreme Court's new analysis to this matter, the Court finds that no "extraordinary circumstances" exist and that this matter, in its entirety, is transferred to the United States District Court for the District of New Jersey.

In light of *Atl. Marine*, Reagan's choice of an Ohio forum merits no weight because his initial choice of New Jersey deserves deference.  All private interest considerations, such as convenience of the parties and witnesses and fairness to the parties in light of the forum selection clause, are deemed to favor transfer.  Finally, the public interest also favors transfer.  The public interest of "having the trial in a forum that is at home with the state law that must govern the case" favors transfer because the Agreement contains a choice of law clause wherein the parties agreed New Jersey law would govern disputes.  *Braman v. Quizno's Franchise Co.*, LLC, No. 5:07CV2001, 2008 WL 611607, at *6 (N.D. Ohio Feb. 20, 2008) citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-509 (1947).  Additionally, the public interest favors transfer because "the public has a strong interest in applying contracts as they are written." *PolyOne Corp. v. Teknor Apex Co.,* No. 1:14CV0078, 2014 WL 4207671, at *6 (N.D. Ohio Aug. 25, 2014) citing *First Solar, LLC v. Rohwedder, Inc.,* No. 3:04CV7518, 2004 WL 2810105 (N.D.Ohio Dec.8, 2004).  Here, Reagan contracted in advance to litigate disputes in New Jersey and "courts should not unnecessarily disrupt the parties' settled expectations." *Atl. Marine Const. Co.,* 134 S. Ct. 568 at 583.  "[T]he interest of justice is served by holding parties to their bargain." *Id.*

## IV.  CONCLUSION

Therefore, for the foregoing reasons, the Court grants Defendants' Motion to Transfer Venue and transfers this matter, in its entirety, to the United States District Court for the District of New Jersey.

IT IS SO ORDERED.

              s/ Christopher A. Boyko
              CHRISTOPHER A. BOYKO
              United States District Judge

Dated: February 9, 2015